**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 19, 2016, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: September 19, 2016**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-15907 |
| | ) | |
| PASQUALE CAPRA, | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| DANIEL M. MCDERMOTT, | ) | Adversary Proceeding |
| UNITED STATES TRUSTEE, | ) | No. 16-1010 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Arthur I. Harris |
| | ) | |
| PASQUALE CAPRA, | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION[1]

In this adversary proceeding, the U.S. Trustee seeks to deny the debtor

Pasquale Capra a bankruptcy discharge under 11 U.S.C. § 727(a)(2)(A) and

_____

[1] This opinion is not intended for official publication.

(a)(4)(A).  Specifically, the U.S. Trustee claims the debtor transferred or concealed assets within one year of filing for bankruptcy with the intent to hinder, delay, or defraud creditors in violation of 11 U.S.C. § 727(a)(2)(A).  The U.S. Trustee also claims the debtor made false oaths within his bankruptcy petition, schedules, statements, and related documents and at his 341 meeting of creditors in violation of 11 U.S.C. § 727(a)(4)(A).  In contrast, the debtor argues that any false statements or concealments of assets are the result of innocent mistakes and therefore do not rise to the level necessary to deny discharge.  For the reasons that follow, the Court finds that the U.S. Trustee failed to establish by a preponderance of the evidence that the debtor had the requisite intent for a denial of discharge and therefore enters judgment in favor of the debtor.

## JURISDICTION

An action to determine an objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J).  This Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7 by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

The debtor filed a Chapter 7 voluntary petition on October 16, 2015 (Case No. 15-15907).  On January 19, 2016, the U.S. Trustee filed a complaint

2

seeking a denial of the debtor's discharge (Adv. Pro. 16-1010).

The U.S. Trustee's adversary complaint seeks to deny the debtor a bankruptcy discharge under 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A). In Count One, the U.S. Trustee asserts that the debtor's discharge must be denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and fraudulently made a false oath as to the Statement of Financial Affairs (SOFA) Question #10, which requires him to list transfers of property made within two years immediately preceding the commencement of the case. In Count Two, the U.S. Trustee asserts that the debtor's discharge must be denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and fraudulently made a false oath as to SOFA Question #18, which requires him to disclose the names of businesses in which he was involved within six years immediately preceding the commencement of the case. In Count Three, the U.S. Trustee asserts that the debtor's discharge must be denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and fraudulently made a false oath on his Schedule G, which requires him to disclose executory contracts and unexpired leases of real or personal property. In Count Four, the U.S. Trustee asserts that the debtor's discharge must be denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and fraudulently made a false oath at his § 341 meeting of creditors. In Count Five, the

3

U.S. Trustee asserts that the debtor's discharge must be denied under

11 U.S.C. § 727(a)(2)(A) because the debtor, with the intent to hinder, delay, or

defraud one or more creditors, concealed the transfer of real property located at

6100 4th St. SW, Vero Beach, Florida, within one year before the filing of the

petition.  In Count Six, the U.S. Trustee asserts that the debtor's discharge must be

denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and

fraudulently made a false oath when he signed his bankruptcy schedules and

SOFA.  In Count Seven, the U.S. Trustee asserts that the debtor's discharge must

be denied under 11 U.S.C. § 727(a)(4)(A) because the debtor knowingly and

fraudulently made a false oath when he declared the information provided in his

electronically filed documents was true, correct, and complete.

The parties filed an amended joint exhibit list on July 12, 2016

(Docket No. 11).  The Court admits these exhibits without objection.  The parties

filed stipulations of fact on July 21, 2016, in lieu of a trial (Docket No. 13).  The

U.S. Trustee and the debtor filed their briefs, and the matter is properly before the

Court.

FINDINGS OF FACT

In this proceeding, the parties agreed to have the Court decide the claims

based on the parties' stipulations of fact and joint exhibits without any witnesses.

4

To the extent that the Court has drawn inferences based on the parties' stipulations and joint exhibits, any such inferences reflect the Court's weighing of the evidence. Unless otherwise indicated, the following facts were stipulated to by the parties or constitute inferences established by a preponderance of the evidence, based on the parties' stipulations and joint exhibits.

The parties submitted the following stipulations:

1. Defendant filed his voluntary chapter 7 petition for relief on October 16, 2015. (Ex. #2-1).

2. Defendant is married to Lina Capra and they both reside at 31925 Lakeshore Blvd., Willowick, Ohio.

3. Defendant's *Schedule A – Real Property* discloses Defendant's interest in real property at 31925 Lakeshore Blvd, Willowick, Ohio and values that interest at $220,000. (Ex. #2-9).

4. Defendant's *Schedule B – Personal Property* discloses $39,525 of property consisting of cash on hand and in the bank, furniture, clothing, a term life policy, and an individual retirement account. (Ex. #2-12).

5. Defendants' *Schedule D – Creditors Holding Secured Claims*, Defendant lists a mortgage against that property in favor of Bank of America in the amount of $353,000, and a second mortgage in favor of Fifth Third Bank in the amount of $0.00. (Ex. 2-14).

6. Defendant has not made a mortgage payment in five or six years. (Ex. 3-11).

7. Defendant's *Schedule F – Creditors Holding Unsecured Priority Claims* lists $288,965 of debt. (Ex. 2-25).

8. Defendant's *Schedule G – Executory Contracts and Unexpired Leases* which

requires debtors to disclose executory contracts and unexpired leases of real or personal property, to state the nature of the debtor's interest in contract, i.e., "Purchaser", "Agent", etc., and to provide the names and complete mailing addresses of all other parties to each lease or contract described is checked indicating that he has no executory contracts or unexpired leases. (Ex. 2-26).

9. In the *Declaration Concerning Debtor's Schedules*, Defendant declared under penalty of perjury that his schedules and summary of schedules are true and correct. (Ex. 2-32).

10. Question #1 of Defendant's Statement of Financial Affairs ("SOFA"), which requires debtors to disclose all sources and amounts of income, states that he has had no income during 2013, 2014, or 2015. (Ex. 2-33).

11. *Question* #2 of Defendant's SOFA states that he has received $1,297 of monthly Social Security income in 2015. (Ex. 2-34).

12. *Question #10* of Defendant's SOFA, which requires a debtor to disclose all property transferred within the two years preceding the commencement of the case, is marked "None." (Ex. 2-36).

13. *Question #18* of *Defendant's* SOFA, which requires a debtor to disclose the "names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which h the debtor owned 5 percent or more of the equity or voting securities within six years immediately preceding the commencement of the case," is marked "None." (Ex. 2-38).

14. Defendant signed the *Declaration Under Penalty of Perjury* at the end of his SOFA, and declared that his answers in his SOFA are true and correct. (Ex. 2-40).

15. Defendant appeared before Alan J. Treinish, the chapter 7 trustee for the 341 meeting of creditors on November 17, 2015. (Ex. 3).

6

16. Defendant affirmed that he was personally familiar with the information contained in the petition, schedules, statements and related documents; the information contained therein was true and correct; and there were no errors or omissions to bring to the trustee's or the Court's attention at the time.

17. Defendant filed three chapter 13 cases between October 29, 2009, and August 29, 2014.  (Ex. 4, 5 and 6).

18. Defendant's spouse, Lina Capra, filed separate chapter 13 cases on March 20, 2015, and May 18, 2016.  (Ex. 7 and 8).

19. In May 1988, Defendant filed articles of incorporation with the Ohio Secretary of State to organize Capra Industries, Inc. (Capra Industries).

20. Beginning in 2005, Capra Industries was the subject of civil lawsuits, a foreclosure action, and several judgment liens.  The business address of Capra Industries as reported in the various lawsuits was 29169 Anderson Road, Wickliffe, Ohio.  (Ex. 63).

21. In April 2008, articles of incorporation were filed with the Ohio Secretary of State by Defendant's son, Dino Capra, to organize Capra Homes, LLC (Capra Homes). The reported address for Capra Homes was 29169 Anderson Road, Wickliffe, Ohio.  (Ex. 31).

22. On July 25, 2008, a quit claim deed conveying 8385 Raleigh Place, Concord Township, Ohio, from Capra Industries to Capra Homes was filed in Lake County, Ohio. The deed was signed by Defendant and his wife as president and vice president of Capra Industries.  (Ex 53.)

23. At the time of the transfer, the real property at 8385 Raleigh Place, Concord Township, Ohio, was secured by an open-end mortgage deed granted by Capra Industries to Park View Federal Savings Bank (Parkview Federal).  The mortgage deed was signed by Defendant and his wife as president and vice president of Capra Industries.  (Ex 56.)

24. On July 30, 2008, an assumption and modification agreement between Parkview Federal, Capra Industries, Pasquale Capra, Lina Capra, Capra Homes

7

and Dino Capra with regards to the debt secured by 8385 Raleigh Place, Willoughby, Ohio was filed in Lake County, Ohio. The assumption and modification agreement was signed by Defendant and his wife, individually, and as president and vice president of Capra Industries. (Ex. 59.)

25. On July 25, 2008, a quit claim deed conveying 38522 Gold Rush Place, Willoughby, Ohio from Capra Industries to Capra Homes was filed in Lake County, Ohio. The deed was signed by Defendant and his wife as president and vice president of Capra Industries. (Ex 54.)

26. At the time of the transfer, the real property at 38522 Gold Rush Place, Willoughby, Ohio, was secured by an open-end mortgage deed granted by Capra Industries to Park View Federal. The mortgage deed was signed by Defendant and his wife as president and vice president of Capra Industries. (Ex 57.)

27. On July 30, 2008, an assumption and modification agreement between Parkview Federal, Capra Industries, Pasquale Capra, Lina Capra, Capra Homes and Dino Capra with regards to the debt secured by 38522 Gold Rush Place, Willoughby, Ohio, was filed in Lake County, Ohio. The assumption and modification agreement was signed by Defendant and his wife, individually, and as president and vice president of Capra Industries. (Ex. 60).

28. On July 25, 2008, a quit claim deed conveying 11443 Viceroy Street, Concord Township, Ohio, from Capra Industries to Dino and Roddy Capra was filed in Lake County, Ohio. The deed was signed by Defendant and his wife as president and vice president of Capra Industries. (Ex 55.)

29. There are approximately twenty-seven (27) Capra Homes LLC real estate transactions in Lake County reviewed by the United States trustee upon which Defendant's signature does not appear.

30. The address listed for Capra Homes on all of the Lake County real estate transactions is either 29169 Anderson Road, Wickliffe, Ohio, or 31925 Lakeshore Blvd., Willowick, Ohio.

31. The only authorized representative of Capra Homes LLC shown on the Secretary of State of Ohio's website is Dino Capra. (Ex. 64).

8

32. In 2012, Defendant signed as president the articles of dissolution with the Ohio Secretary of State for Capra Industries.  (Ex. 30.)

33. On June 13, 2013, a special warranty deed was filed in Indian River County, Florida transferring title to 2325 84th Ct., Vero Beach, Florida, from Federal Home Loan Mortgage Corporation (Federal Home) to Defendant.  (Ex. 11.)

34. On July 18, 2013, a quit claim deed was filed in Indian River County, Florida transferring tile to 2325 84th Ct., Vero Beach, Florida, from Defendant to Capra Homes.  (Ex. 12.)

35. The mailing address on the deeds conveying title of 2325 84th Ct., Vero Beach, Florida, to Defendant and then conveying title to Capra Homes are the same – 31925 Lake Shore Blvd., Willowick, Ohio.

36. On June 26, 2013, a special warranty deed was filed in Indian River County, Florida transferring title to 614 30th Ave., SW, Vero Beach, Florida, from Bank of America to Defendant.  (Ex. 13.)

37. On July 17, 2013, a quit claim deed was filed in Indian River County, Florida transferring title to 614 30th Ave., SW., Vero Beach, Florida, from Defendant to Capra Homes.  (Ex. 14.)

38. On April 22, 2014, a special warranty deed was filed in Indian River County, Florida transferring title to 426 27th Dr., Vero Beach, Florida, from Deutsche Bank to Defendant.  (Ex. 16.)

39. On September 22, 2014, a quit claim deed was filed in Indian River County, Florida transferring title to 426 27th Dr., Vero Beach, Florida, from Defendant to Capra Homes.  (Ex. 17.)

40. On June 26, 2012, a special warranty deed was filed in Indian River County, Florida transferring title to 1115 11th Ave., SW, Vero Beach, Florida, from Federal Home to Defendant.  (Ex. 18.)

41. On July 5, 2012, a quit claim deed was filed in Indian River County, Florida transferring title to 1115 11th Ave., SW, Vero Beach, Florida, from Defendant to

Capra Homes.  (Ex. 19.)

42. On March 8, 2013, a warranty deed was filed in Indian River County, Florida, transferring title to 1115 11th Ave. SW, Vero Beach, Florida from Capra Homes to Christian M. Chang.  Defendant signed the deed as managing partner of Capra Homes.  The business address listed on the deed for Capra Homes is 31925 Lakeshore Blvd., Willowick, Ohio 44095.  (Ex. 20.)

43. On February 24, 2015, a warranty deed was filed in Indian River County, Florida transferring title to 6100 4th St., SW, Vero Beach, Florida from Susan Havens to Defendant.  (Ex. 21.)

44. On February 24, 2015, a mortgage deed was filed in Indian River County, Florida with Defendant as mortgagor and Susan Havens as mortgagee for the purchase of 6100 4th St., SW, Vero Beach, Florida.  (Ex. 22.)

45. On June 29, 2015, a quit claim deed was filed in Indian River County, Florida transferring title to 6100 4th St., SW, Vero Beach, Florida, from Defendant to Capra Homes.  The mailing address listed on the deed for Capra Homes is 31925 Lakeshore Blvd., Willowick, Ohio.  (Ex. 23.)

46. The residential contract for the sale of 1180 20th Ave., Vero Beach, Florida, is dated September 24, 2015.  (Ex. 25.)

47. The HUD-1 settlement sheet for the sale of 1180 20th Ave., Vero Beach, Florida, is dated October 26, 2015.  (Ex. 26.)

48. On October 27, 2015, a special warranty deed was filed in Indian River County, Florida, transferring title to 1180 20th Ave., Vero Beach, Florida from Deutsche Bank to Defendant.  (Ex. 27.)

49. On January 25, 2016, a quit claim deed conveying 1180 20th Ave., Vero Beach, Florida, from Defendant to Capra Homes was filed in Indian River County, Florida. (Ex. 28).

50. Defendant's federal income tax returns for 2012, 2013 and 2014 report income only from social security benefits.  (Ex. 37, 38 and 39.)

51. Defendant's prior bankruptcy petitions list income only from social security benefits and contributions from his son. (Ex. 4, 5 and 6.)

52. There is no evidence to prove the source of the funds that were used to purchase the Florida properties.

53. Capra Industries reported gross sales of $488,646 for 2007 and $235,690 for 2008. (Ex. 40 and 41.)

54. Capra Industries reported gross sales of zero for 2009. (Ex. 42.)

55. Dino Capra reported gross sales of $35,999 on his Schedule C Profit or Loss from Business for 2008 for business activity described as construction under the business name of Capra Industries. The mailing address on the return is 35300 Stevens Blvd., Eastlake, Ohio 44095. (Ex. 49-4.)

56. Dino Capra reported gross sales of $1,138,610 on his Schedule C Profit or Loss from Business for 2009 for business activity described as construction under the business name of Capra Industries LLC. The mailing address on the return is 35300 Stevens Blvd., Eastlake, Ohio 44095. (Ex. 50-4.)

57. Defendant's federal income tax returns for 2012, 2013 and 2014 shows social security benefits as his only source of income. (Ex. 37, 38 and 39.)

58. Capra Homes' federal income tax returns for 2011, 2013 and 2014 list a mailing address of 31925 Lakeshore Blvd., Willowick, Ohio, 44095. (Ex. 46, 47 and 48.)

59. Defendant's personal bank statements from New York Family Banks list an address of 31925 Lake Shore Blvd, Willowick, Ohio, 44095.

60. Capra Homes' bank statements from PNC bank list an address of 31925 Lake Shore Blvd, Willowick, Ohio, 44095.

In addition to the stipulations, the parties submitted joint exhibits

1 through 66, including Exhibit 2A. The Court notes the following findings from

11

joint exhibits.

The debtor did provide the U.S. Trustee with certain financial information pursuant to a document request. The provided documents included bank statements, federal income tax returns, deeds, real estate purchase agreements, and settlement statements. The U.S. Trustee also conducted his own public records search for information regarding the debtor's former business, Capra Industries, and the debtor's son's business, Capra Homes. After the U.S. Trustee filed the Complaint to Deny Discharge outlining the missing transfers, business involvement, and executory contracts, the debtor filed an amended Schedule G, Summary of Schedules, and Statement of Financial Affairs on July 6, 2016. (Case No. 15-15907, Docket No. 33).

The U.S. Trustee did not provide any evidence to prove the source of the funds used to purchase the Florida properties. The debtor claims he only facilitated the purchase of those properties for his son. (Ex. 3, at 20-21). The properties were placed into the debtor's name, but the debtor claims the funds used to purchase the properties came from Capra Homes, his son's business. (Ex. 3, at 20-21). The only benefit the debtor received from Capra Homes was living in some of the houses when he was in Florida until the houses were sold. (Ex. 3, at 22). There is no evidence the debtor received any compensation from

12

Capra Homes for obtaining these properties.

In addition, on March 8, 2013, a warranty deed was filed in Indian River County, Florida, transferring title to 1115 11th Ave. SW, Vero Beach, Florida, from Capra Homes to Christian M. Chang. (Ex. 20-1). The debtor signed the deed, and he was identified as a "managing member" of Capra Homes on the deed. (Ex. 20-1). The debtor explained at the meeting of creditors that this was a mistake, and Dino Capra is the only member of Capra Homes. (Ex. 3, at 19).

## CONCLUSIONS OF LAW

The U.S. Trustee, the party seeking to deny the debtor's discharge, must prove each element of an action under § 727 by a preponderance of the evidence. *See* Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654 (1991); *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679 (6th Cir. 2000). An action to deny the debtor a discharge is to be construed liberally in favor of the debtor and strictly against the party seeking denial of discharge. *See Keeney*, 227 F.3d at 683.

In support of his Complaint to Deny Discharge, the U.S. Trustee relies primarily on the debtor's failure to disclose two property transfers, his alleged business involvement with Capra Homes, and an executory contract.

Ultimately, several factors compel a conclusion in the debtor's favor. First,

13

no evidence was presented to call into question the credibility of the debtor's explanations. Second, even if these transactions had been fully disclosed, there still would not have been any assets for the chapter 7 trustee to pursue against the debtor or any of the transferees, adding weight to the debtor's argument that he lacked a motive to make false statements.

> I. Counts One through Four, Six, and Seven: The U.S. Trustee Failed to Establish by a Preponderance of the Evidence that the Debtor Knowingly and Fraudulently Made a False Oath in Violation of 11 U.S.C. § 727(a)(4)(A)

The Court will address each of the 11 U.S.C. § 727(a)(4)(A) counts in order. Under § 727(a)(4)(A), a debtor's bankruptcy discharge may be denied if he "knowingly and fraudulently, in or in connection with the case made a false oath or account." To establish a denial of discharge claim under § 727(a)(4)(A), a party objecting to discharge must prove by a preponderance of the evidence each of the following elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Eifler v. Wilson & Muir Bank & Trust Co.*, 588 F. App'x 473, 477 (6th Cir. 2014); *In re Keeney*, 227 F.3d at 685.

First, statements made on the debtor's bankruptcy schedules, Statement of

14

Financial Affairs, and at his § 341 meeting of creditors are all under oath. *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008) (citing *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)). Second, whether a debtor's statements or omissions are actually false is a question of fact. *In re Keeney*, 227 F.3d at 685.

Skipping to the fifth element, materiality only requires that the subject of the debtor's false statement "bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property." *In re Keeney*, 227 F.3d at 686 (quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)).

The most commonly contested elements in § 727(a)(4)(A) actions are the third and fourth elements: the debtor's knowledge that his statement was false and the debtor's fraudulent intent when he made the statement. *U.S. Trustee v. Halishak (In re Halishak)*, 337 B.R. 620, 627 (Bankr. N.D. Ohio 2005). A debtor knew the statement was false when "the debtor knew the truth, but nonetheless failed to give the information or gave contradicting information." *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006). Debtors rarely admit to making a statement with fraudulent intent, so courts must use circumstantial evidence and the debtor's conduct to infer the requisite state of mind. *Stevenson*

15

*v. Cutler (In re Cutler)*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003); *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998). The statement must be made with actual, not constructive, fraudulent intent. *McDermott v. Schwartz (In re Schwartz)*, 527 B.R. 266, 275 (Bankr. E.D. Mich. 2015). Fraudulent intent can be proven by a false representation that was material or an omission that the debtor knew would create an erroneous impression. *In re Keeney*, 227 F.3d at 685. A false statement "resulting from ignorance or carelessness does not rise to the level of knowing and fraudulent." *Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 374-75 (Bankr. E.D. Tenn. 2009). *See also In re Keeney*, 227 F.3d at 686. In contrast, "[a] series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive." *In re Cutler*, 291 B.R. at 726. A false statement made without adequate care for its accuracy may be sufficiently reckless to justify the denial of discharge. *In re Keeney*, 227 F.3d at 686; *Becker v. McInerney (In re McInerney)*, 509 B.R. 109, 115-17 (Bankr. E.D. Mich. 2014) (recklessness proven by debtor's pattern of conduct including disobeying court orders, wrongfully using property of the estate for his own benefit, and refusing to schedule undisclosed assets).

The court determines fraudulent intent as a factual issue based on the "all the facts and circumstances of the case." *In re Keeney*, 227 F.3d at 686. *Accord*

16

*Eifler*, 588 F. App'x at 480.  Courts have looked to how the error was discovered and the debtor's motive to make the omission or false statement.  *J & R Inv. Co. v. Anthony (In re Anthony)*, 515 B.R. 831, 837 (Bankr. D. Utah 2014).  Often, the ultimate outcome is dependent on the court's assessment of the debtor's credibility.  *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir. 2002).

The U.S. Trustee alleges the debtor made false statements under oath with fraudulent intent in the form of failures to disclose: (1) transfers of property; (2) business involvement; and (3) an executory contract of real property.

> *Count One: The U.S. Trustee Failed to Establish by a Preponderance of the Evidence that the Debtor's False Oath Regarding His Transfers of Property Was Made with Fraudulent Intent*

The U.S. Trustee argues the debtor made a false oath as to SOFA question #10 when he indicated he had not transferred any property within two years immediately preceding the commencement of his case.  The debtor's case began on October 16, 2015, when he filed his petition.  The debtor transferred properties located at 426 27th Drive, Vero Beach, Florida, on September 22, 2014, and 6100 4th Street SW, Vero Beach, Florida, on June 29, 2015, from himself to Capra Homes.  Both transfers were within Question #10's two-year period.

As far as the required elements of § 727(a)(4)(A), the U.S. Trustee only met

17

his burden of proof for three of the five elements. First, the statement was under oath. Second, the statement was false because the debtor was involved in the transfer of two properties within two years immediately preceding the commencement of his case. Finally, the statement was materially related to the bankruptcy case because the property transactions bear a relationship to the existence and disposition of property.

However, the U.S. Trustee did not meet his burden as to the third and fourth elements: (3) the debtor knew the statement was false and (4) the debtor made the statement with fraudulent intent. The debtor explained that he did not understand these transfers as business activity, but rather as a father helping out his son. In addition, he explained that he received no compensation from Capra Homes other than living in some of the houses when he was in Florida until the houses were sold. (Ex. 3, at 22). It is possible that the debtor omitted the transfers knowingly. It is also possible that the omissions were innocent mistakes. Based on the evidence provided in the stipulated facts and joint exhibits, both explanations are plausible, and the U.S. Trustee has not demonstrated that his explanation is more plausible than that of the debtor. There is no evidence that the debtor used his own money to purchase the Florida properties, and his tax returns show that he has had no income that he could have used to provide financial assistance to Capra

18

Homes.  In addition, he amended his Schedule G to list the 6100 4th Street and

426 27th Drive properties as transfers not in the ordinary course of his business or

financial affairs (Case No. 15-15907, Docket No. 33).  As a result, the

U.S. Trustee failed to meet his burden of proof for elements three and four.

> *Count Two: The U.S. Trustee Failed to Establish by a*
> *Preponderance of the Evidence that the Debtor's False*
> *Oath Regarding His Business Involvements Was Made*
> *with Fraudulent Intent*

The U.S. Trustee argues the debtor made a false oath as to SOFA question

#18 when the debtor indicated he had no involvement with any businesses within

six years immediately preceding the commencement of his case.  In fact, the

debtor obtained title to five properties in Florida and then transferred the

properties to Capra Homes during the six years preceding his filing for

bankruptcy.  He also transferred one property from Capra Homes to a third party

purchaser and signed the deed as "managing member" of Capra Homes.

As far as the elements of § 727(a)(4)(A), the U.S. Trustee only met his

burden of proof for three of the five elements.  The statement was under oath,

false, and materially related to the bankruptcy case because the statement

concerned the debtor's business dealings.  The U.S. Trustee did not meet his

burden of proof for the third and fourth elements: (3) the debtor knew the

19

statement was false and (4) the debtor made the statement with fraudulent intent. The U.S. Trustee failed to provide evidence to suggest that the debtor actually thought of the transfers as business dealings when he filed his petition and knowingly omitted them as business activity from his petition. He consistently described the transfers as accommodations to his son and not business dealings. The debtor is not listed as a managing member of Capra Homes in the paperwork on file with the State of Ohio. The debtor's tax returns indicate that he has had no income from Capra Homes.

The U.S. Trustee argues that the debtor contradicted himself regarding his business involvement with Capra Homes and admitted to the business involvement in his "Answers and Affirmative Defenses of Defendant." (Case No. 16-01010, Docket No. 4). However, all the debtor stated in his answer was that he believed "the transfers were in the ordinary course of his affairs and not subject to the scrutiny of the Court since he made no financial contribution whatsoever to the LLC or to the purchase of the properties." The debtor did not state the transfers were in the ordinary course of business or list them as such on his schedules, so he did not admit to a business involvement with Capra Homes. Based on the evidence provided in the stipulated facts and joint exhibits, both parties' explanations for the omission are plausible, and the U.S. Trustee has not

20

demonstrated that his explanation is more plausible than that of the debtor. As a result, the U.S. Trustee failed to meet his burden of proof for elements three and four.

> *Count Three: The U.S. Trustee Failed to Establish by a*
> *Preponderance of the Evidence that the Debtor's False*
> *Oath Regarding His Executory Contract of Real*
> *Property Was Made with Fraudulent Intent*

The U.S. Trustee argues the debtor made a false oath as to Schedule G when he indicated that he had no executory contracts or unexpired leases. In fact, the debtor signed a real estate purchase agreement for the purchase of 1180 20th Ave., Vero Beach, Florida, on September 24, 2015, and acquired title to it on October 27, 2015. In between these two events, the debtor filed his petition for bankruptcy on October 16, 2015. The debtor should have disclosed the real estate purchase agreement on Schedule G. Even if he was only purchasing the property on behalf of his son, he should have listed the agreement with the designation of "agent."

Again, the U.S. Trustee only met his burden of proof for three of the five elements. The statement was under oath, false, and materially related to the bankruptcy case because the statement concerned the existence and disposition of property and possible business dealings. The U.S. Trustee did not prove the third

21

and fourth elements: (3) the debtor knew the statement was false and (4) the debtor made the statement with fraudulent intent. Based on the evidence provided in the stipulated facts and joint exhibits, the debtor could have misunderstood the scope of Schedule G or he could have purposefully omitted the contract. Both parties' explanations are plausible, and the U.S. Trustee has not demonstrated that his explanation is more plausible than that of the debtor. As a result, the U.S. Trustee failed to meet his burden of proof for elements three and four.

> *Count Four: The U.S. Trustee Failed to Establish by a Preponderance of the Evidence that the Debtor's False Oath at § 341 Meeting of Creditors Was False*

The U.S. Trustee argues the debtor made a false oath when he answered "no" to the specific question from the Chapter 7 trustee if he was managing member of Capra Homes. This statement is not false and so could not have been made with fraudulent intent. The debtor incorrectly signed one contract transferring a Florida property from Capra Homes to an outside buyer as "managing member." The debtor explained this was a mistake. The only authorized representative of Capra Homes shown on the Ohio Secretary of State's website is Dino Capra. Stipulation #31. The debtor answered the question truthfully when he said he was not a managing member. As a result, the U.S. Trustee failed to meet his burden of proof.

*Counts Six and Seven: The U.S. Trustee Failed to*
*Establish by a Preponderance of the Evidence that the*
*Debtor's Bankruptcy Schedules and Statement of*
*Financial Affairs Declaration and Electric Court Filing*
*Declaration Were Made with Fraudulent Intent*

In Counts Six and Seven, the U.S. Trustee essentially restates Counts One through Three and argues the debtor made two false oaths when he signed the Bankruptcy Schedules and Statement of Financial Affairs declaration and the Electronic Court Filing declaration. Both are general declarations that the information provided was true and correct. The U.S. Trustee presented no new evidence to prove these false oaths were made with fraudulent intent.

The Court notes that a combination of errors and omissions that individually may not rise to the level necessary to deny discharge, when taken in the aggregate, may evidence the requisite fraudulent intent or recklessness. *In re McInerney*, 509 B.R. at 115. Based on the Court's above analysis, even the combination of the debtor's errors is insufficient to deny discharge.

II. Count Five: The U.S. Trustee Failed to Establish by a Preponderance of the Evidence that the Debtor Transferred or Concealed Property with the Intent to Hinder, Delay, or Defraud Creditors in Violation of 11 U.S.C. § 727(a)(2)(A)

Under 11 U.S.C. § 727(a)(2)(A), a debtor's bankruptcy discharge may be denied if he "with intent to hinder, delay, or defraud a creditor . . . , has

23

transferred, removed, destroyed, mutilated, or concealed, . . . property of the debtor, within one year before the date of the filing of the petition." To establish a denial of discharge claim under § 727(a)(2)(A), a party objecting to discharge must prove by a preponderance of the evidence each of the following elements: (1) the disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud a creditor through the act of disposing of the property; (3) the debtor's ownership of the property at issue; and (4) the disposition occurred within one year of filing for bankruptcy.

*In re Keeney*, 227 F.3d at 654. The purpose of § 727(a)(2)(A) is to prevent the discharge of a debtor attempting to forestall collection of his debts by concealing or otherwise disposing of assets. *Mei Yan Zhou v. Wen Jing Huang (In re Wen Jing Huang)*, 544 B.R. 256, 262 (Bankr. E.D. Mass. 2016). While a solitary omission may be sufficient, a pattern of failures is more likely to show fraudulent intent. *In re Sowers*, 229 B.R. at 157.

Since a debtor rarely admits to fraudulent intent, courts use a debtor's actions to make an inference of such intent. *In re Cutler*, 291 B.R. 726. Factors past courts have evaluated include:

> (1) a lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) the retention of possession for use and benefit; (4) the financial condition of the

24

transferor before and after the transfer; (5) the cumulative effect of the transactions and course of conduct after the onset of financial difficulties or threat of suit; and (6) the general chronology and timing of events.

*C & H Electrical v. Newell (In re Newell)*, 321 B.R. 885, 889-90

(Bankr. N.D. Ohio 2005). Courts have also evaluated the materiality of the allegedly fraudulent transfers. *In re Zhang*, 463 B.R. at 79.

The Court has already decided the debtor lacked fraudulent intent under § 727(a)(4)(A), and fraudulent intent under § 727(a)(2)(A) is practically identical. One Ohio bankruptcy court noted that "the standard necessary to support a finding of knowingly making a false statement with the intent to defraud [under § 727(a)(4)(A)] is, for all practicable purposes, identical to the standard required to support a finding of fraudulent intent under § 727(a)(2)." *In re Newell*, 321 B.R. at 892. *See also Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 160 (Bankr. E.D. Pa. 2010). The only difference is the context in which fraudulent intent is necessary: one is while making a false oath, and the other is while concealing property. Therefore, the Court's finding that the debtor did not have fraudulent intent under § 727(a)(4)(A) strongly weighs in favor of a similar finding under § 727(a)(2)(A).

The U.S. Trustee argues the debtor's discharge should be denied under

25

§ 727(a)(2)(A) based on the debtor's concealment of 6100 4th St., Vero Beach, Florida.  The debtor acquired title to the property on February 24, 2015, and then transferred title to Capra Homes on June 29, 2015.  The debtor responds by arguing the factors showing his lack of fraudulent intent under § 727(a)(4)(A) also apply to § 727(a)(2)(A).

The U.S. Trustee failed to prove by a preponderance of the evidence that the debtor made the transfer to Capra Homes with fraudulent intent as required by element two.  There is no evidence that he used his own funds to purchase the property or that his role in purchasing the property and then transferring it to his son was anything other than an accommodation to his son.  He never intended to keep the property for himself or to benefit from the resale of the property.  In addition, the debtor had transferred five other properties to Capra Homes prior to filing this petition for bankruptcy.  In none of these situations did the U.S. Trustee submit evidence to suggest that the debtor used his own funds to purchase the property or that the debtor's intent was anything more than to assist his son.  His transfer of 6100 4th St. was not a new strategy being employed to conceal assets from and delay the bankruptcy proceeding.  The circumstantial evidence provided fails to establish that the U.S. Trustee's explanation (*i.e.*, that the debtor made the transfer with fraudulent intent) is more likely than the debtor's innocent

26

explanation. Therefore, the U.S. Trustee failed to establish his claim in Count Five seeking denial of the debtor's discharge under 11 U.S.C. § 727(a)(2)(A).

CONCLUSION

Based on the above analysis, the Court enters judgment in favor of the debtor on the U.S. Trustee's complaint seeking denial of the debtor's discharge.

IT IS SO ORDERED.